UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| TORRESS ROMMEL BAKER, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 1:18-CV-113 AGF |
| ORRIN HAWKINS, et al., | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the motion of plaintiff, Torress Rommel Baker, an inmate at the Cape Girardeau County Jail for leave to commence this action without payment of the required filing fee. For the reasons stated below, the Court finds that plaintiff does not have sufficient funds to pay the entire filing fee and will assess an initial partial filing fee of $1.00. *See* 28 U.S.C. § 1915(b)(1). Furthermore, based upon a review of the complaint, the Court will dismiss this action pursuant to *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) and 28 U.S.C. § 1915(e)(2)(B).

### Background

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 asserting violations of his Fourth Amendment rights against illegal seizure, false arrest and false imprisonment. He states that on March 27, 2014, he was driving down the road in Cape Girardeau, Missouri, running some errands, when he was stopped by Cape Girardeau Police Officer Orrin Hawkins. Plaintiff states that he was told by Officer Hawkins that he was being stopped because when the Officer saw him, he "leaned back in his seat," and additionally because his back license plate was out.

Plaintiff claims that he was aware that the license plate needed to be illuminated, but he believed it was okay if the plate was illuminated with the back taillights.

Plaintiff states that at this point he "had his black tablet in his hand." He told Officer Hawkins that he was driving his friend's car, and he began to reach toward the glove compartment to provide Officer Hawkins with "the necessary info." Plaintiff asserts that Officer Hawkins "pulled out his gun on [him], and yelled 'put your hands where I can f-ng see them, boy.'" Plaintiff alleges that by this time, Officer Unknown Ziegler pulled up behind Officer Hawkins' car and got out, pulling his gun. Plaintiff claims that Officer Hawkins again told him to get out of the car, exclaiming that he also smelled "weed." Plaintiff states that he followed Officer Hawkins' orders, and he got out of the car and he allowed Officer Hawkins to walk him back to Officer Ziegler. He asserts that Officer Hawkins then drove plaintiff's car to the Aldi's parking lot without his consent.

Plaintiff acknowledges that when Officer Ziegler asked him for his name he provided him with a false name, and when he was asked if he had "anything on him," he ignored Officer Ziegler. Plaintiff states that after he was questioned several times by Officer Ziegler he finally told him that he had a gun on him, but that he had a permit for it. Plaintiff asserts that after Officer Hawkins finished searching his vehicle he "found some drugs."[1] Plaintiff was then taken

---

[1]The police report, obtained in plaintiff's criminal case, states that the search of the car disclosed a Schnuck's plastic bag in which there was a Ziploc bag containing traces of suspected marijuana. The report states that Officer Hawkins described the inner bag as emitting the odor of marijuana. Officer Rahn, who assisted in the search of the vehicle, located a 24 oz. can of Monster which Officer Hawkins opened and discovered 13 grams of methamphetamine, as well as 11 grams of marijuana. A green colored glass pipe was also discovered in plaintiff's pocket during a search of his person.

to the Cape Girardeau County Jail and identified through the Federal Automated Fingerprint Identification System.

Plaintiff alleges that after he was booked at the Cape Girardeau County Jail, Officers Hawkins and Ziegler submitted "an arrest warrant application" to the Cape Girardeau County Prosecutor's Office, "which ended up on Christopher Limbaugh's desk." Plaintiff claims, in a conclusory manner, that Cape Girardeau County Prosecutor Chris Limbaugh and Assistant Cape Girardeau County Prosecutor Frank Miller should have "suspected the warrant application was false." He asserts that the information that "he leaned back in his seat" and that the inside of his car "smelled like marijuana" should have tipped off the prosecutors that the information provided to them by Officer Hawkins was made up. Plaintiff states that he believes that Officer Hawkins lied at the preliminary hearing in Cape Girardeau County Court relating to these matters. Nonetheless, the state case was not dismissed at the preliminary hearing.

Plaintiff claims that after his preliminary hearing took place in state court, "they" decided to bind the case over to federal court and dismiss the action in state court. Thus, plaintiff claims that Assistant United States Attorney Timothy Willis took over prosecuting plaintiff's case in the United States District Court for the Eastern District of Missouri, Southeastern Division. *United States v. Baker*, No. 1:15CR3 AGF (E.D.Mo.). At that time, plaintiff was charged in federal court with one count of possession with intent to distribute methamphetamine and one count of being a felon in possession of a firearm. *Id.*

Plaintiff was assigned Scott Tilsen as the Federal Public Defender in his federal court action, and he claims that Scott Tilsen failed to effectively assist him when he decided not to

object to the Magistrate Judge's Report and Recommendation denying the Motion to Suppress the evidence in the case.

In the Report and Recommendation denying the Motion to Suppress Evidence, Magistrate Judge Abbie Crites-Leoni found that plaintiff had committed a traffic violation allowing for probable cause for the traffic stop, namely a failure to have an illuminated rear registration marker. Moreover, Judge Crites-Leoni found that Officer Hawkins' testimony that he had smelled marijuana and that plaintiff's behavior relative to his hand tucked under his thigh during the traffic stop had been too suspicious to be believable, and it had caused Officer Hawkins to tell plaintiff to place his hands on the steering wheel, making plaintiff's detention lawful. Although it wasn't until the second request to plaintiff to place his hands on the wheel that Officer Hawkins drew his gun, prior to plaintiff being ordered to get out of the car. It was at this point that Officer Hawkins testified that plaintiff placed something black that was large enough to be a weapon in his pocket. This turned out to be a gun, as plaintiff admitted to Officer Ziegler when he was cuffing him. *United States v. Baker*, No. 1:15CR3 AGF (E.D.Mo.). [Doc. #44] Additionally, plaintiff's suspicious behavior and the odor of marijuana gave Officer Hawkins enough probable cause to search plaintiff's car. *Id.*

Plaintiff claims that defense attorney Scott Tilsen contacted defendant Willis and told him that he believed plaintiff would have to plead guilty after Judge Crites-Leoni ruled against him on the suppression issues.

Plaintiff pled guilty to felon in possession of a firearm and possession with intent to distribute methamphetamine on July 24, 2015. He was sentenced to forty-eight months'

imprisonment and three years' supervised release. *United States v. Baker*, No. 1:15CR3 AGF (E.D.Mo.).

Plaintiff brings this § 1983 action, alleging defendants Orrin Hawkins and Unknown Ziegler violated his Fourth Amendment right to be free of an unreasonable search and seizure without probable cause. Similarly, plaintiff alleges that defendants falsely arrested him and falsely imprisoned him without probable cause. Plaintiff also alleges, in a conclusory fashion, and without any factual assertions whatsoever, that defendants Hawkins and Ziegler violated his rights under the Equal Protection Clause by racially discriminating against him in pulling him over because he was African American. Additionally, plaintiff asserts that defendant Ziegler failed to read him a *Miranda* warning during the stop on the side of the road.

Plaintiff asserts a civil conspiracy claim under Missouri law, 42 U.S.C. § 1983 and § 1985(2) against Hawkins and Ziegler for purportedly "reaching an agreement to detain plaintiff…without probable cause to believe plaintiff had committed a crime, and based on plaintiff's race."

Plaintiff also asserts that prosecuting attorneys Christopher Limbaugh, Franklin Miller, Angel Woodruff and Timothy Willis violated plaintiff's rights by failing to believe that Officers Hawkins and Ziegler were lying to support their warrant application, their testimony at the preliminary hearing and their testimony at the suppression hearing in the United States District Court for the Eastern District of Missouri.[2]

---

[2] Plaintiff claims that he is also asserting a "substantive due process claim against defendants Hawkins, Ziegler, Miller, Limbaugh, Woodruff, and Willis" for allegedly fabricating police reports and purportedly using false statements against him to obtain a conviction. Although labeled as a "substantive due process" claim, it appears that this claim is more properly brought under the Fourth Amendment. "Therefore, a § 1983 plaintiff's claim that he was arrested or

Plaintiff alleges that Scott Tilsen violated his rights to "effective assistance of counsel" by talking him into pleading guilty to the criminal charges brought against him. Plaintiff also asserts that he wanted to testify at the Motion to Suppress hearing but Scott Tilsen did not want him to. Plaintiff identifies this claim as both a "legal malpractice" claim, as well as a violation of his Sixth Amendment rights.

Plaintiff asserts that defendants Cape Girardeau County and the City of Cape Girardeau are subject to "*Monell*" liability. He alleges, in a conclusory statement, that Sheriff John Jordan, of Cape Girardeau County, and Wes Blair, the Chief of Police in the City of Cape Girardeau, condone a policy or custom of allowing officers to make traffic stops of individuals without probable cause and/or based on race. Plaintiff believes he has been a victim of such a policy.

Finally, plaintiff asserts a state law claim of intentional infliction of emotional distress against the defendants. For relief, plaintiff seeks monetary relief.

**Discussion**

A prisoner may not recover damages in a § 1983 suit where the judgment would necessarily imply the invalidity of his conviction, continued imprisonment or sentence unless the conviction or sentence is reversed, expunged or called into question by issuance of a writ of habeas corpus. *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994); *Schafer v. Moore*, 46 F.3d 43, 45 (8th Cir. 1995); *see also Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (applying rule in § 1983 suit seeking declaratory relief).

---

prosecuted without probable cause, even if labeled a claim of malicious prosecution, must be judged under the Fourth Amendment, not substantive due process." *Stewart v. Wagner*, 836 F.3d 978, 983 (8th Cir. 2010).

Plaintiff has admitted that he is guilty of being a felon in possession of a firearm, as well as being unlawfully in possession of methamphetamine by pleading guilty to the charges against him.³ He has not brought any appeals of his conviction or post-conviction proceedings to overturn his conviction at this time. Thus, arguing in a § 1983 lawsuit that he was wrongly arrested or that the statements against him were false would necessarily imply the invalidity of the crime for which he has pled guilty. As such, *Heck* bars plaintiff's Fourth Amendment claims that he was illegally seized, arrested without probable cause and that he was falsely arrested/falsely imprisoned as a result of fabricated reports. In addition, plaintiff's allegations that he was arrested because he was black are wholly conclusory and fail to state a plausible claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

Plaintiff's claims against prosecutors Christopher Limbaugh, Franklin Miller, Angel Woodruff and Timothy Willis are wholly based upon their alleged wrongdoing while initiating and pursuing the State of Missouri's, as well as the Federal Government's, criminal prosecutions of him. However, prosecutors are immune from such claims. *See Imbler v. Pachtman*, 424 U.S. 409, 430–31 (1976) (holding that prosecutors are absolutely immune from civil rights claims based on actions taken while initiating and pursuing a criminal prosecution); *see also Brodnicki v. City of Omaha*, 75 F.3d 1261, 1266 (8th Cir. 1996) ("Absolute immunity covers prosecutorial functions such as the initiation and pursuit of a criminal prosecution, the presentation of the

---

³Simple failure to read Miranda warnings to an arrestee does not violate the arrestee's rights and cannot be grounds for a §1983 action. *Chavez v. Martinez*, 538 U.S. 760, 772 (2003). Additionally. the Supreme Court of the United States has held that a criminal defendant waives the privilege against self-incrimination when he enters a plea of guilty. *Godinez v. Moran,* 509 U.S. 389, 397 n. 7 (1993).

state's case at trial, and other conduct that is intimately associated with the judicial process"); *Sample v. City of Woodbury*, 836 F.3d 913, 916 (8th Cir. 2016) (same). Plaintiff's allegations that these prosecutors were out to get him or acted in bad faith do not save his claims. Immunity for the performance of prosecutorial functions is not defeated by allegations of improper motivation. *See Imbler*, 424 U.S. at 427-28 (there is no fraud exception to prosecutorial immunity, and it is better to leave wrongs committed by dishonest officers unredressed than to subject the honest to the constant dread of retaliation); *see, e.g., Wahl v. McIver*, 773 F.2d 1169, 1173 (11th Cir. 1985); *Lerwill v. Joslin*, 712 F.2d 435, 441 (10th Cir. 1983).

Plaintiff states that he is bringing claims of either legal malpractice or claims under the Sixth Amendment against his public defender, Scott Tilsen. Claims against defendant Tilsen are subject to dismissal, as "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981). *See also Myers v. Vogal*, 960 F.2d 750, 750 (8th Cir. 1992) (stating that attorneys who represented plaintiff, "whether appointed or retained, did not act under color of state law and, thus, are not subject to suit under section 1983"); and *Rogers v. Bruntrager*, 841 F.2d 853, 856 (8th Cir. 1988) ("Public defenders do not act under color of state law for purposes of 42 U.S.C. § 1983 when performing the traditional functions of defense counsel").[4]

---

[4]To the extent plaintiff wishes to bring an ineffective assistance of counsel claim against defendant Tilsen in a post-conviction proceeding, this Memorandum and Order does not bar plaintiff from doing so. Normally ineffective assistance of counsel claims may be asserted in a post-conviction proceeding under 28 U.S.C. § 2255. However, such a claim would relate solely to defendant's conviction and could not state a claim for civil damages, and would need to be filed within one year of the conviction becoming final. *See* 28 U.S.C. 2255(f)(1).

Plaintiff's policy and custom claims against Cape Girardeau County, the City of Cape Girardeau, Sheriff John Jordan, and Wes Blair, the Chief of Police in the City of Cape Girardeau, also fail to state a claim upon which relief may be granted. Plaintiff alleges that Sheriff Jordan and Chief of Police Blair condone a policy or custom of allowing officers to make traffic stops of individuals without probable cause and/or based on race. However, plaintiff has failed to provide any other factual allegations relating to such a policy. Nonetheless, he asserts that Cape Girardeau County and the City of Cape Girardeau should be held liable under "*Monell*" for such a policy or custom.

A local governing body can be sued directly under § 1983. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). Municipal liability under § 1983 may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1089 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Thus, there are three ways in which a plaintiff can prove municipal liability.

First, a plaintiff can show the existence of an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). *See also Russell v. Hennepin Cty.*, 420 F.3d 841, 847 (8th Cir. 2005) ("A policy is a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible…for establishing final policy with respect to

the subject matter in question"). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id*. at 390.

Alternatively, a plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, the plaintiff must demonstrate:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013). Finally, a plaintiff can show municipal liability by establishing a deliberately indifferent failure to train or supervise. To do so, the plaintiff must demonstrate a "pattern of similar constitutional violations by untrained employees." *S.M. v Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

Plaintiff has not alleged any facts in his complaint that would demonstrate a policy or custom that is unconstitutional or that violates his and others' civil rights. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a

policy or custom" that caused the alleged deprivation of plaintiff's rights). Accordingly, plaintiff's allegations against defendants regarding *Monell* liability fail to state a claim.

Plaintiff's also states that he is bringing a § 1983 civil conspiracy claim against all of the defendants. To prevail on a § 1983 conspiracy claim, a plaintiff must allege, *inter alia*, the deprivation of a constitutional right or privilege. *Askew v. Millerd*, 191 F.3d 953, 958 (8th Cir. 1999) (internal citation omitted). As noted above, plaintiff herein has failed to state a viable claim that his constitutional rights were violated, and he therefore cannot maintain a § 1983 conspiracy claim. Even if plaintiff had successfully alleged a constitutional violation, his § 1983 conspiracy claim would fail. The prosecutors plaintiff has brought claims against are immune from such a claim because their alleged participation consisted of otherwise immune acts, and plaintiff's allegations of conspiracy against the other defendants are wholly conclusory. Allegations of conspiracy must be pled with sufficient specificity and factual support to suggest a "meeting of the minds." *Manis v. Sterling*, 862 F.2d 679, 681 (8th Cir. 1988); *see also Iqbal*, 556 U.S. at 678. Plaintiff has simply failed to do so.

Under Missouri law, the tort of intentional infliction of emotional distress has four elements: (1) the defendant must act intentionally or recklessly; (2) the defendant's conduct must be extreme and outrageous; and (3) the conduct must be the cause (4) of severe emotional distress. *See Polk v. Inroads/St. Louis, Inc.*, 951 S.W.2d 646, 648 (Mo. Ct. App. 1997). "Although case law does not provide us with a precise definition of extreme and outrageous, the test adopted by Missouri courts for actionable conduct is that the conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (internal quotations

omitted). Additionally, the conduct must be "intended *only* to causes extreme emotional distress to the victim." *See Gibson v. Brewer*, 952 S.W.2d 239, 249 (Mo. 1997) (emphasis added).

Here, plaintiff has not alleged, and the facts do not support, that defendants' sole purpose in their conduct was to cause emotional distress to plaintiff. Rather, as Magistrate Judge Crites-Leoni found, defendants were motivated by a desire to follow the law when conducting a traffic stop on plaintiff, and the events that unfolded in finding plaintiff's gun and the drugs in plaintiff's car followed from there. Additionally, there is nothing in Judge Crites-Leoni's findings of fact that creates a finding that defendants acted with conduct that was so "outrageous in character" and "extreme in degree, as to go beyond all possible bounds of decency." For these reasons, the Court cannot find that plaintiff's allegations plausibly state a claim for intentional infliction of emotional distress under Missouri state law.

Because the Court is dismissing plaintiff's federal claims, the Court will also dismiss any remaining supplemental state claims. *See* 28 U.S.C. § 1367(c)(3).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis [Doc. #2] is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff must pay an initial filing fee of $1.00 within thirty (30) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.[5]

---

[5]After payment of the initial partial filing fee, the prisoner is required to make monthly payments

-12-

**IT IS FURTHER ORDERED** that this action is **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B) and pursuant to the doctrine of *Heck v. Humphrey,* 512 U.S. 477, 486-87 (1994).

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel [Doc. #4] is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that to the extent that plaintiff's complaint contains any additional state law claims that have not been dismissed, the Court declines to exercise supplemental jurisdiction over those claims. *See* 28 U.S.C. § 1367(c)(3).

Dated this 2nd day of January, 2019.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

---

of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner will deduct the payments and forward them to the Court each time the amount in the account exceeds $10. 28 U.S.C. § 1915(b)(2).